DECISION
This is an appeal by defendant-appellant, Avis M. Crews, from a judgment of the Franklin County Municipal Court, following a jury trial in which the jury returned verdicts finding defendant guilty of aggravated menacing and telecommunications harassment.
On September 14, 2000, a criminal complaint was filed against defendant, charging her with one count of aggravating menacing, in violation of R.C. 2903.21, and one count of telecommunications harassment, in violation of R.C. 2917.21. The matter came for trial before a jury on October 5, 2000.
The first witness for plaintiff-appellee, the state, was Dr. Harris Bowman, the alleged victim, who gave the following testimony. Dr. Bowman is a dentist, who also teaches at The Ohio State University College of Dentistry. Dr. Bowman has a dental office at 2671 Cleveland Avenue.
Defendant became a dental patient of Dr. Bowman beginning in 1978. For a number of years, Dr. Bowman "never had any problems treating any of the [defendant's] minor restorations that she might have needed," and Dr. Bowman did not recall any complaints by defendant of pain from the treatment she received. (Tr. at 24.)
In 1998, Dr. Bowman was informed that defendant had filed a complaint with the Ohio State Dental Board ("dental board"), alleging that Dr. Bowman "had placed micro transmitters in the fillings that I had placed in her mouth." (Tr. at 24.) An investigator was sent to Dr. Bowman's office to review defendant's file with him. The charge was subsequently dismissed for insufficient evidence. Dr. Bowman had never previously received a complaint against him during his twenty-six years of dental practice.
Prior to the complaint filed by defendant with the dental board in 1998, the last contact Dr. Bowman had with defendant was in 1991. On that occasion, defendant came to Dr. Bowman's office and requested x-rays. Dr. Bowman's office had a policy that prohibited giving x-rays or other materials to patients who had an outstanding balance due, and defendant's request for x-rays was denied on that basis.
On June 20, 2000, Dr. Bowman was at home working in his yard when he received a call from the Columbus Police Department. As a result of the call, Dr. Bowman and his wife immediately went to his office on Cleveland Avenue. As Dr. Bowman approached the rear door of the office building, he observed that the glass of the storm door had been shattered. He also observed "two holes made by a projectile of some sort" in the wood panel of the rear door. (Tr. at 37.) Dr. Bowman further noticed "some lead pellets lodged in the carpet and along the hallway to the kitchen." (Tr. at 37.) There were two bullet holes in a kitchen window, and "impact marks" on the brick in several places at the rear of the building. In the front of the building, the office sign had been torn down.
Dr. Bowman and his wife began cleaning up the office area. Later that day, Dr. Bowman and his wife listened to messages on the office telephone answering machine. One of the messages left on the machine was from "Avis," indicating that "the work that I had done for her has caused her is causing her some severe problems, and that she was coming to my office * * * and blow my motherfucking head off." (Tr. at 43.) Dr. Bowman recognized the voice as that of defendant. Dr. Bowman stated that, after hearing the tape he was "[v]ery, very fearful." (Tr. at 48.) At trial, the tape containing the threatening message was played before the jury.
Columbus Police Officer Kenneth Kirby was on duty on June 20, 2000, and on that date he was dispatched to Dr. Bowman's dental office, located near the corner of Manchester Avenue and Cleveland Avenue. When the officer arrived, he observed defendant standing on the corner. The officer approached defendant and asked her if she had a weapon. Defendant handed the officer a plastic food bag and stated, "here you go, here's the gun." (Tr. at 64.) The officer recovered a .380 caliber semiautomatic handgun from inside the bag.
The officer subsequently entered the building and discovered a number of bullet holes throughout the office. Officer Kirby also retrieved shell casings the same caliber as the handgun he recovered from defendant.
Defendant testified on her own behalf. Defendant indicated that she had been a patient of Dr. Bowman from 1978 until approximately 1992. Defendant stopped going to Dr. Bowman's office for dental treatment after she experienced employment difficulties that prevented her from paying for her dental bills in cash.
Defendant testified that she filed a complaint with the dental board against the dentist because, "I couldn't get Dr. Bowman to comply with me in giving me my charting and records and some x-rays that I specifically needed." (Tr. at 89.) Defendant indicated that she suffered from pain in her teeth, "and they were getting real sensitive to * * * hot and cold, and at some point they felt like they were * * * moving a little bit, * * * getting weak at the root." (Tr. at 89.) Defendant explained to the dental board that, "I basically wanted my record to review because I felt that something had been left in there or something had been placed at the root of my teeth that was causing the problems." (Tr. at 89.)
Defendant made a request with a receptionist at Dr. Bowman's office for the records. When defendant failed to get a response, she filed a complaint with the dental board. Defendant did not believe that she owed Dr. Bowman's office any money.
Defendant stated that she left the message on the answering machine "out of, I think, frustration of not getting him to deal with me about some of the problems * * * that I continued to have with my teeth." (Tr. at 91-92.) She stated that she did not intend to harm Dr. Bowman.
During cross-examination, defendant acknowledged that she wanted to scare Dr. Bowman by placing the telephone message. She also acknowledged that, several hours after making the phone call, she arrived at his office with a firearm and fired the weapon at the back door of the office.
Following the presentation of evidence, the jury returned verdicts finding defendant guilty of both charges in the complaint. The trial court sentenced defendant by entry filed November 10, 2000.
On appeal, defendant sets forth the following assignment of error for review:
 Appellant's convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.
Under her single assignment of error, defendant challenges both the sufficiency and weight of the evidence supporting her convictions.
We initially note the separate standards of review for sufficiency and weight of the evidence. In State v. Martin (Apr. 19, 2001), Franklin App. No. 00AP-836, unreported, this court stated:
 * * * In determining the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." * * * However, "[u]nlike a challenge to the sufficiency of the evidence, which attacks the adequacy of the evidence presented, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented." * * * When reviewing the manifest weight of the evidence, an appellate court sits as a thirteenth juror; the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of all witnesses and determines whether, in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. * * * Further, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." * * *
As noted under the facts, defendant was convicted of aggravated menacing and telecommunications harassment. R.C. 2903.21(A) defines the offense of menacing and states in part that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person."
R.C. 2917.21 sets forth the offense of telecommunications harassment and states in part:
 (A) No person shall knowingly make or cause to be made a telecommunication, or knowingly permit a telecommunication to be made from a telecommunications device under the person's control, to another, if the caller does any of the following:
* * *
 (3) During the telecommunication, violates section 2903.21 of the Revised Code[.]
Defendant's primary contention is that the state failed to present sufficient evidence on the charge of aggravated menacing because, it is asserted, the state failed to show that Dr. Bowman believed that defendant would cause him serious physical harm. More specifically, defendant argues that Dr. Bowman failed to state during his testimony that he feared he might suffer serious physical harm, nor did the witness indicate any additional security measures he adopted, or changes in his routine, to raise the inference that he feared physical harm.
Ohio courts have noted that, "evidence of one's belief of serious physical harm may be established by circumstantial evidence." State v. Henize (Nov. 1, 1999), Brown App. No. CA99-04-008, unreported. See, also, State v. Shumaker (Feb. 18, 1994), Darke App. No. 1332, unreported (while victim did not testify as to her own state of mind, there was sufficient evidence to infer that she believed she was under threat of serious physical harm).
In a case relied upon by the state, City of Trotwood v. Wyatt (Jan. 21, 1993), Montgomery App. No. 13319, unreported, involving a conviction for aggravated menacing, the victim testified that she was scared by threatening telephone calls made by the defendant. The appellate court, in affirming defendant's conviction, held that the victim's testimony "must be read as a part of the record as a whole." Id. Thus, the court considered both the testimony of the victim that defendant threatened to kill her, as well as evidence that, on other occasions, defendant had committed violent acts, including breaking through the door of her home.
In the present case, there was evidence presented by the state indicating that Dr. Bowman arrived at his office and discovered that someone had fired multiple shots into his office, leaving bullet holes in a rear door, along the hallway to the kitchen, and through a kitchen window. Other damage had also been done to the office. Dr. Bowman subsequently listened to a telephone message in which the caller threatened to "blow [his] * * * head off." (Tr. at 43.) Dr. Bowman testified that he was very fearful as a result of the threatening message. Defendant, who identified herself on the phone message, admitted at trial that she left the message and that she had fired a weapon at Dr. Bowman's office. Defendant also acknowledged that her intent was to scare Dr. Bowman.
An attempt to carry out a threat is not an essential element of the offense of aggravated menacing. State v. Schwartz (1991),77 Ohio App.3d 484, 486 (aggravated menacing does not require that the offender be able to carry out his threat or even believe himself capable of carrying out the threat). However, as noted by the state, the fact that it appeared to the victim in the instant case that defendant made such an attempt supports the inference that the victim believed defendant would cause him serious physical harm. As previously noted, after discovering the bullet holes in the office and hearing defendant's message, in which she threatened to "blow [his] * * * head off," the victim testified that he was "[v]ery, very fearful." (Tr. at 43, 48.) Upon review of the record as a whole, including defendant's violent conduct at the victim's office and the nature of the message threatening Dr. Bowman with serious physical harm, there was sufficient evidence by which a trier of fact could conclude that defendant knowingly caused the victim to believe that defendant would cause him serious physical harm. City of Trotwood, supra. Having found that there was sufficient evidence as to the elements of aggravated menacing, we also find that there was sufficient evidence to support the conviction for telecommunications harassment.
Further, in considering the manifest weight of the evidence, we conclude that the jury did not lose its way in resolving credibility determinations, nor did the verdicts create a manifest miscarriage of justice. Here, the jury could have reasonably concluded that the victim believed that defendant would cause serious physical harm. While defendant testified that she did not intend to harm the victim, the trier of fact was in the best position to determine the credibility of the testimony presented, and we decline to substitute our judgment for that of the jury.
Defendant also contends that the trial court erred in failing to grant her motion for judgment of acquittal. Pursuant to Crim.R. 29, a trial court "shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. Further, Ohio courts have recognized that the standard of review on appeal from a decision to deny a motion for acquittal is the same standard of review used as if it were reviewing a challenge to the sufficiency of the evidence. State v. Kneller (May 24, 1996), Lucas App. No. L-95-196, unreported. We have previously concluded above that there was sufficient evidence to support a finding of all the essential elements of aggravated menacing and, in light of that determination, we further find that the trial court did not err in failing to grant defendant's motion for acquittal.
Based upon the foregoing, defendant's single assignment of error is without merit and is overruled, and the judgment of the Franklin County Municipal Court is hereby affirmed.
 __________________ DESHLER, J.
TYACK and PETREE, JJ., concur.